**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IVAN MCKINNEY,** | **Civil Action No. 16-4460(FLW)** |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **ASST. SUPERINTENDENT GEORGE ROBINSON, et al.,** | |
| **Defendants.** | |

**WOLFSON, United States District Judge**:

I.  **INTRODUCTION**

This matter has been opened to the Court by Plaintiff's filing of a Complaint pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights arising from the processing of his legal mail at New Jersey State Prison ("NJSP"), alleged retaliation by certain corrections officers in response to his filing of grievances and complaints, and the alleged failures of supervisory Defendants to redress the ongoing legal mail issues and acts of retaliation.  This Court previously granted Plaintiff's application to proceed *in forma pauperis*.  At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

II.  **FACTUAL BACKGROUND**

Plaintiff's Complaint is dated March 21, 2016, but was docketed on July 14, 2016.  (ECF No. 1.)  In the cover letter attached to his submission, which is dated July 11, 2016, Plaintiff states that he initially submitted his Complaint for filing on March 21, 2016, but did not receive a

1

response from the Court, and is therefore resubmitting the Complaint.  (ECF No. 1, at 1.)

Plaintiff has sued twenty eight individual Defendants for violations of his civil rights in

connection with the processing of his legal mail and for incidents of alleged retaliation.[1]  He

seeks damages and declaratory relief to stop the alleged opening of his legal mail outside his

presence and the alleged acts of retaliation.  (ECF No. 1, Attachment to Complaint at 10-11.)

Plaintiff's Complaint details a number of occasions on which he allegedly received legal

mail that had been opened outside his presence.  (*Id.* at 2-8.)  Plaintiff has sued several NJSP

officials in their personal supervisory capacities for failing to stop NJSP staff from opening

Plaintiff's legal mail outside his presence.  He first alleges that Antonio Campos, Assistant

Administrator of NJSP "failed to correct or stop his staff from opening [Plaintiff's] legal mail

outside [Plaintiff's] presence.  This was in spite of many grievances [Plaintiff] filed and legal

letters he receive [sic] it persisted. . . . Mr. Campos failed to answer several grievances and some

very late.  This caused Plaintiff to contact the [o]mbudsman."

Plaintiff further alleges that Lisa Swift, who is identified as an Assistant Supervisor at

NJSP, "did nothing to stop her Sgt. and officers" from opening Plaintiff's legal mail outside his

presence.  (*Id.*, Compl. at 5.) According to Plaintiff, Defendant Swift "responded to many

grievances late and some not at all.  And she wrote a letter attesting to matters being exhausted

and [Plaintiff's] attempts to exhaust."  Defendant Swift also allegedly "failed to address the

severe harassment/retaliation that Plaintiff endured for making . . . complaints regarding the

opening of his legal mail."  (*Id.*)

---

[1] Plaintiff's Complaint appears to list thirty six separate defendants; however, some of the paragraphs in the Complaint describe discrete incidents involving Defendants who Plaintiff already identified.

Plaintiff next alleges that George Robinson, who is identified as an Assistant Superintendent of NJSP, "fail[ed] to train and supervise[.]" (*Id.*, Attachment to Compl. at 2.)  He alleges that "in spite of Plaintiff's many letters, grievances, and his attorney letters, Mr. Robinson never corrected the violations of Plaintiff's 1st and 14th amendment[] [rights] regarding the opening of Plaintiff's legal mail out of his presence by prison officials and did not curb the severe retaliation against Plaintiff for complaining about these issues, instead he personally participated in the above."  (*Id.* at 2.)

Later in his Complaint, Plaintiff alleges that Defendant Timothy Maine, who is identified as an Assistant Superintendent of NJSP "[f]ailed to stop his staff from constantly opening [Plaintiff's] legal mail out of [his] presence." (*Id.* at 7.) Plaintiff alleges that Defendant Maine also "failed to curb Plaintiff from extreme retaliation by his staff for complaining about his legal mail constantly being opened out of his presence.  And from retaliation from the exercise of written and oral complaints."  (*Id.*)

Plaintiff further alleges the following regarding Defendant Cynthia Johnson, who is identified as an Assistant Superintendent of NJSP:  "In spite of Plaintiff's many letters, Ms. Johnson has failed to stop her staff from opening [Plaintiff's] legal mail out of my presence. And has failed to curb Plaintiff from severe harassment and retaliation by staff for Plaintiffs [sic] complaints made."  (*Id.*)

Plaintiff has also sued three sergeants at NJSP in their personal capacities for opening his legal mail outside his presence and/or failing to stop their staff from opening Plaintiff's legal mail.  Plaintiff alleges that on February 21, 2014, Defendant Sgt. Derrick Smith, who is identified in the Complaint as the "Mail [R]oom Sergeant" (ECF No. 1, Attachment to Compl. at 2.), "open[ed][his] legal mail outside [his] presence and had it sent to [Plaintiff] 35 days after the

post-mark.  (*Id.* at 5.)  Plaintiff also alleges that on July 28, 2015, Defendant Smith sent Plaintiff

legal mail that had been opened outside his presence.  (*Id.* at 7.)  Plaintiff further alleges that

Defendant Smith "failed to stop opening his legal mail and stop his staff from doing such"

despite Plaintiff's filing of numerous grievances.  (*Id.*)  Plaintiff also alleges that Defendant

Smith "purposely sent an order from the district court in Newark, and told them I was no longer

here.  On 10-06-14, the court received it back as undeliverable.  When [Plaintiff] wrote a

grievance Sgt. Smith state the court need to put your right address."  (*Id.* at 4.)  Plaintiff further

alleges that Sgt. Duran "continues to open my legal mail out of my presence.  And allow his staff

to do the same."  Similarly, Plaintiff alleges that "Sgt. Samusuk in spite of letters from an

attorney and grievances from [Plaintiff] failed to stop his staff from opening [Plaintiff's] legal

mail."  (*Id.* at 7.)

Plaintiff has also sued corrections officers Berger, Kilpatrick, Bosley, Caldwell, Irwin,

Karaba, Bonnilla, Genevesse, Ortiz, Combs, A. Lee, and Kaminsky July 11, 2016 for

"delivering" or "bringing" Plaintiff his legal mail that had been opened outside his presence on

certain dates.  (*Id.*, Attachment to Compl. at 2-8.)  He provides no facts to suggest that these

corrections officers actually participated in the opening of his mail or that they have supervisory

roles that are related to legal mail.

He also alleges that on December 17, 2014, corrections officer Whittaker left Plaintiff's

legal mail with corrections officer Pierce.  Plaintiff states that "[t]his was not proper protocol by

the assigned legal mail officer that night" and further alleges that the legal mail in question was

opened outside his presence. (*Id.*, Attachment to Compl. at 4)  Plaintiff also alleges that

corrections officers Harmon and Kilpatrick, acting in concert, refused to accept or process

Plaintiff's outgoing legal mail on April 14, 2015 and April 15, 2015.  Sgt Russo allegedly told

other officers that they did not need to sign or process Plaintiff's legal mail.  (*Id.* at 6.)

Plaintiff also sets forth the following facts to support his First Amendment retaliation

claims against Defendants Morales, Cecilia, Genevesse, Kilpatrick, and Harmon:

> [Officer] Morales in concert with [Officer] Kilpatrick and
> Sgt. Cecilia planted a wire in my cell causing me to go to
> detention. In retaliation for Sgt. Mike making [Officer] Morales a
> witness to my legal mail being opened on 8-27-15.[2]
>
> And me filing a[n] inquiry on 09-04-15 stating that
> [Officer] Morales was a witness.  On 09-08-2015[,] [Plaintiff]
> went through severe heat exhaustion and [Officer] Genevesse and
> Sgt. Cecilia refused to call a medical code for ten minutes.  I wrote
> a grievance on Sgt. Cecilia [Officer] Genevess[e] for their
> deprivation.  I filed a grievance on [Officers] Kilpatrick and
> Harmon for refusing my legal mail on 4-14-15 and 4-15-15. . . . I
> ask that all officers and the Sgt. be named be brought in for this
> retaliation claim."

(*Id.* at 8-9.)

Plaintiff also alleges that supervisory Defendants Campos, Swift, Robinson, Maine, and

Johnson failed to "curb" the severe harassment and retaliation by staff at NJSP.  (ECF No. 1,

Compl. at 4-5, Attachment to Compl. at 2, 7-8.)

## III.  <u>STANDARD OF REVIEW</u>

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat.

1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those

civil actions in which a prisoner is proceeding *in forma pauperis*, see 28 U.S.C. § 1915(e)(2)(B),

seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a

---

[2] Earlier in his Complaint, Plaintiff states that on August 27, 2015, Officer Bosley brought
Plaintiff legal mail that had allegedly been opened outside his presence.  (*Id.*, Attachment to
Compl. at 8.)  Plaintiff "told [Officer] Bosley to call a Sgt. Mike" who allegedly confirmed that
the letters were open.  Sgt. Mike allegedly "made [Officer] Morales come be a witness[,]" and
Defendant Morales was allegedly "not happy" about being a witness.  (*Id.*)

claim with respect to prison conditions, *see* 42 U.S.C. § 1997e.  The PLRA directs district courts

to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which

relief may be granted, or seeks monetary relief from a defendant who is immune from such

relief.  "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28

U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6)."  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012)

(citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x

230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F.

App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

Here, Plaintiff's Complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B) and

28 U.S.C. § 1915A(b).  When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6),

courts first separate the factual and legal elements of the claims, and accept all of the well-

pleaded facts as true.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

All reasonable inferences must be made in the plaintiff's favor.  *See In re Ins. Brokerage

Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).  The Complaint must also allege "sufficient

factual matter" to show that the claim is facially plausible.  *Fowler v. UPMS Shadyside*, 578 F.3d

203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3

(3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Courts are required to liberally construe pleadings drafted by *pro se* parties.  *Tucker v.

Hewlett Packard, Inc.*, No. 14-4699 (RBK/KMW), 2015 WL 6560645, at *2 (D.N.J. Oct. 29,

2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  Such pleadings are "held to less

strict standards than formal pleadings drafted by lawyers." *Id.*  Nevertheless, *pro se* litigants must still allege facts, which if taken as true, will suggest the required elements of any claim that is asserted.  *Id.* (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013)).  To do so, [a plaintiff] must plead enough facts, accepted as true, to plausibly suggest entitlement to relief." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (citing *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)).  Furthermore, "[l]iberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.' *Id.* (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  That is, "[e]ven a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief.  *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

## IV.   <u>ANALYSIS</u>

The Court construes Plaintiff to allege claims of interference with his legal mail under the First and Fourteenth Amendments and retaliation under the First Amendment.[3]

### a.  **Official Capacity Claims for Damages**

Plaintiff has sued the Defendants in their official and personal capacities and seeks damages and injunctive/declaratory relief.  The Court will dismiss with prejudice the official capacity claims for damages against all Defendants, who are state employees, because these claims are essentially damages claims against the state.  And the state is not a "person" subject to suit under § 1983.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 68-70 (1989)

---

[3] Plaintiff's Complaint references the Eighth Amendment, but his claims do not appear to challenge the conditions of his confinement.  As such, the Court does not construe Plaintiff to raise claims under the Eighth Amendment, which prohibits prison conditions which amount to cruel and unusual punishment.

(holding that States and governmental entities considered "arms of the State" for Eleventh Amendment purposes are not "persons" within the meaning of § 1983); *Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them.

### b. Interference with Legal Mail Claims

The Court construes the facts alleged in Plaintiff's Complaint to raise claims of interference with his legal mail under 42 U.S.C. § 1983.  The opening of legal mail outside the presence of the addressee implicates the First Amendment.[4]  *See Fontroy v. Beard*, 559 F.3d 173, 174–75 (3d Cir. 2009) (citing *Jones v. Brown*, 461 F.3d 353, 355 (3d Cir. 2006) (holding that "state prisoners have an interest protected by the First Amendment in being present when their incoming legal mail is opened."). The Third Circuit has "recognized a cause of action to address "[a] state pattern and practice ... of opening legal mail outside the presence of the addressee inmate," because such a practice "interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech." *Diaz v. Palakovich*, 448 F. App'x 211, 215 (3d Cir. 2011) (citing *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir.2006) (reaffirming the holding of *Biereg v. Reno*, 59 F.3d 1445, 1458 (3d Cir.1995)).   The assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen may state a First Amendment claim.  *McLeod v. Monmouth Cty. Corr. Inst.*, No. CIV.A. 05-4710 (AET), 2006 WL 572346, at *3 (D.N.J. Mar.

---

[4] A prison policy that impinges on inmates' First Amendment rights and results in the opening of legal mail outside the presence of a prisoner will nevertheless pass constitutional muster if the policy is "reasonably related to legitimate penological interests[.]" *Fontroy v. Beard*, 559 F.3d 173, 174 (3d Cir. 2009) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987).  It is not clear from the Complaint, whether the opening of Plaintiff's legal mail is pursuant to a NJSP policy, and, if so, whether that policy would survive constitutional scrutiny.

8, 2006) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1431-32 (7th Cir.1996); *Castillo v. Cook County Mail Room Dep't*, 990 F.2d 304 (7th Cir.1993)); *Thompson v. Hayman*, No. 09-1833, 2011 WL 2652185, at *5 (D.N.J. July 6, 2011) (opening outside of the prisoner's presence, reading, delaying, or stealing a prisoner's legal mail violates a prisoner's First Amendment rights). "A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation." *Fuentes v. State of New Jersey Office of Pub. Defs.*, No. CIV.A. 05-3446(FLW), 2006 WL 83108, at *5 (D.N.J. Jan. 11, 2006) (citing *Morgan v. Montayne*, 516 F.2d 1367 (2d Cir.1975), *cert. denied*, 424 U.S. 973 (1976)).

The Due Process Clause of the Fourteenth Amendment also guarantees citizens access to courts to present claims of wrongdoing. *See* U.S. Const. amend. XIV, § 1; *Wolff v. McDonnell*, 418 U.S. 539, 578–79 (1974). In *Bieregu*, the Third Circuit had ruled that a pattern and practice of opening legal mail outside the addressee prisoner's presence impinges on the inmate's right to court access under the First Amendment right to petition clause and the Fourteenth Amendment due process clause, independent of whether the prisoner can show "actual injury" to his or her access to the courts. *Jones*, 461 F.3d at 359 n.6 (citing *Bieregu*, 59 F.3d at 1455). In *Oliver v. Fauver*, 118 F.3d 175, 178, (1997), however, the Third Circuit recognized that this alternative holding of *Bieregu* was abrogated by the Supreme Court's decision in *Lewis v. Casey*, 518 U.S. 343 (1996). *See Jones*, 461 F.3d at 359 n.6. Thus to maintain a separate Fourteenth Amendment access to the courts claim based on prison official's interference with legal mail, a Plaintiff must allege actual injury.

Here, Plaintiff has not alleged actual injury, which is required for a separate Fourteenth Amendment claim based on a prison official's interference with legal mail. As such, the Court

will dismiss without prejudice the Fourteenth Amendment claims and will address whether

Plaintiff states a legal mail claim under the First Amendment against any of the Defendants.

"To establish liability under § 1983, each individual defendant 'must have personal

involvement in the alleged wrongdoing.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)

(quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).  The Third Circuit has

recognized claims for supervisory liability in connection with a pattern and practice of opening

legal mail where a plaintiff has notified supervisory defendants about a pattern of legal mail

violations, but the supervisory defendants to whom he complained directly and/or directed his

grievances have failed to redress the ongoing problem.  *See e.g., Diaz v. Palakovich*, 448 F.

App'x 211, 215 (2011) (vacating summary judgment where there was a factual dispute as to

whether mailroom supervisor, grievance coordinator, and prison administrator had

contemporaneous knowledge of and failed to correct subordinates' pattern or practice of

interfering with prisoner's legal mail).  As a general matter, a supervisor may be held liable

under Section 1983 if that supervisor was "involved personally, meaning through personal

direction or actual knowledge and acquiescence, in the wrongs alleged." *McKenna v. City of

Philadelphia*, 582 F.3d 447, 460 (3d Cir. 2009) (citing Rode, 845 F.2d at 1207); *see also A.M. ex

rel J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)("A supervisor

may be personally liable ... if he or she participated in violating the plaintiff's rights, directed

others to violate them, or, as the person in charge, had knowledge of and acquiesced in his

subordinates' violations."  To sufficiently allege knowledge and acquiescence, a Plaintiff must

provide facts suggesting that the Defendant supervisor "had contemporaneous, personal

knowledge of [the alleged violation(s)] and acquiesced in it."  *See Evancho*, 423 F.3d at 353

(explaining that a civil rights complaint "is adequate where it states the conduct, time, place, and persons responsible").

In *Diaz*, the Third Circuit reversed the District Court's entry of summary judgment in favor of three supervisor defendants and determined that a fact finder could find that all three supervisors had contemporaneous knowledge of a pattern or practice of legal mail handling by subordinates.  The first supervisor was copied on or responded to three of the prisoner's grievances, the second supervisor acknowledged receipt of nearly every one of the prisoner's grievances, and the third supervisor had admitted knowledge of two violations and was directly responsible for supervising the mailroom that repeatedly opened Diaz's clearly marked legal mail outside of his presence.  *See Diaz*, 448 F. App'x at 215.

Here, Plaintiff alleges Defendant Sgt. Derrick Smith, who is identified in the Complaint as the "Mail [R]oom Sergeant" (ECF No. 1, Compl at 2.), "open[ed][his] legal mail outside [his] presence and had it sent to [Plaintiff] 35 days after the post-mark."  (*Id.*, Attachment to Compl. at 5.) Plaintiff further alleges that Defendant Smith "failed to stop opening his legal mail and stop his staff from doing such" despite Plaintiff's filing of numerous grievances.[5]  (*Id.* at 7.)  The Court will permit the First Amendment claims regarding the opening of his legal mail to proceed against Defendant Smith based on his opening of Plaintiff's legal mail outside his presence and his failure to stop the mail room staff from continuing the practice.

---

[5] Plaintiff also alleges that Defendant Smith "purposely sent an order from the district court in Newark, and told them I was no longer here.  On 10-06-14, the court received it back as undeliverable.  When [Plaintiff] wrote a grievance Sgt. Smith state the court need to put your right address."  (*Id.* at 4.)  It is not clear whether Plaintiff alleges that this conduct, standing alone, violated his civil rights.  Plaintiff is free to submit an Amended Complaint to clarify how this conduct violated his civil rights.

The Court also finds that Plaintiff has provided sufficient facts at this early stage of the proceedings to plausibly suggest that Defendants Campos and Swift had knowledge of a pattern or practice of legal mail handling by subordinates but failed to correct the problem.  With respect to Defendant Campos, Plaintiff alleges that Defendant Campos, who is the Assistant Administrator of NJSP "failed to correct or stop his staff from opening [Plaintiff's] legal mail outside [Plaintiff's] presence.  This was in spite of many grievances [Plaintiff] filed and legal letters he receive [sic] it persisted. . . . Mr. Campos failed to answer several grievances and some very late."  (ECF No. 1, Compl. at 4.)  Plaintiff further alleges that Lisa Swift, who is identified as an Assistant Supervisor at NJSP, "did nothing to stop her Sgt. and officers" from opening Plaintiff's legal mail outside his presence.  (*Id.* at 5.) The Complaint alleges that Defendant Swift "responded to many grievances late and some not at all.  And she wrote a letter attesting to matters being exhausted and [Plaintiff's] attempts to exhaust."  (*Id.*)  Read liberally, Plaintiff's Complaint alleges that Defendants Campos and Swift had knowledge of his legal mail issues, received and responded to Plaintiff's grievances regarding the opening of his legal mail outside his presence, but failed to take steps to correct the problem.

Plaintiff has not provided sufficient facts to plausibly suggest that supervisory Defendants Maine, Robinson, or Johnson had notice of the alleged legal mail violations, and did not take any corrective actions to avoid acquiescing in their subordinates' misconduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556) (A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  Plaintiff provides no facts explaining how Defendant Maine was on notice of Plaintiff's ongoing legal mail issues. (ECF No. 1, Attachment to Compl. at 7.)  Although Plaintiff references his "many letters and

grievances and attorney letters" (*Id.* at 8; *see also id.* at 2), he does not state that Defendants Robinson and/or Johnson actually received that correspondence, and/or responded to any of his grievances, or were otherwise on notice of the alleged violations.  As such, the Court will dismiss without prejudice the supervisory claims against Defendants Maine, Robinson, and Johnson.

The Court also finds that Plaintiff has provided insufficient facts to plausibly suggest that Defendants Duran opened his legal mail or that Defendants Duran and Samusuk were on notice of a pattern or practice of legal mail handling by subordinates but failed to correct the problem. With respect to Defendant Samusuk, Plaintiff states the following: "Sgt. Samusuk in spite of letters from an attorney and grievances from [Plaintiff] failed to stop his staff from opening [Plaintiff's] legal mail."  (ECF No. 1, Attachment to Compl. at 7.)  Plaintiff also alleges that Sgt. Duran "continues to open my legal mail out of my presence.  And allow his staff to do the same."  (*Id.* at 8.)  Plaintiff's allegations with respect to these two Defendants are conclusory, and he provides no facts to suggest that these Defendants had any supervisory duties related to legal mail.

The Court also dismisses without prejudice legal mail claims against those corrections officer Defendants whose involvement, as described in the Complaint, is limiting to delivering or bringing Plaintiff his legal mail, which had been opened outside his presence.  Plaintiff provides no facts to suggest that these individuals actually opened his legal mail outside his presence or that any of these Defendants were supervisors who knew their subordinates were opening his legal mail outside Plaintiff's presence, and failed to correct the problem.  As such, the Court will dismiss without prejudice the claims against corrections officers Berger, Kilpatrick, Bosley,

Caldwell, Irwin, Karaba, Bonnilla, Genevesse, Ortiz, Combs, A. Lee, and Kaminsky based on their delivery to Plaintiff of mail that was opened outside Plaintiff's presence.

The Court will also dismiss without prejudice Plaintiff's claims against Defendant corrections officers Whittaker and Pierce, which are based on the allegation that Defendant Whittaker left Plaintiff's legal mail with Defendant Pierce in violation of "protocol." (ECF No. 1, Attachment to Compl. at 4.)  Violations of protocol or prison procedures do not, without more, state a claim for relief under § 1983.  Plaintiff likewise does not provide facts suggesting that these Defendants actually opened his legal mail outside his presence or that they were supervisors who knew their subordinates were opening Plaintiff's legal mail, and failed to correct the problem.

Finally, with respect to his legal mail claims, the Court will also dismiss without prejudice Plaintiff's claims against Defendants Harmon and Kilpatrick, which are premised on their alleged refused to accept or process Plaintiff's outgoing legal mail on two discrete occasions.  (*Id.*, Attachment to Compl. at 6.)   Even assuming Plaintiff could state a claim for interference with legal mail based on Defendants' refusal to accept his mail for processing, the alleged conduct, without more, does not rise to the level of a constitutional violation because it occurred on only two occasions.  Although Plaintiff alleges that Defendant Russo told other officers that they did not need to sign or process Plaintiff's legal mail (*id.*), he provides no facts to suggest that other officers refused to accept Plaintiff's legal mail.   As such, the Court will dismiss without prejudice the First Amendment claims against Defendants Harmon and Kilpatrick premised on their refusal to accept his mail on two occasions.

### c.  Retaliation Claims

The Court will also dismiss without prejudice the retaliation claims against all Defendants.   Retaliation against a prisoner based on his exercise of a constitutional right violates the First Amendment.  *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir.2012) (citing *Mitchell v. Horn*, 318 F.3d 523, 529–31 (3d Cir. 2003); *Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001); *Allah v. Seiverling*, 229 F.3d 220, 224–26 (3d Cir. 2000). To prevail on a retaliation claim, plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights"; and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  *Rauser*, 241 F.3d at 333 (quoting *Allah*, 229 F.3d at 225); *see also Tinsley v. Giorla*, 369 F. App'x 378, 381 (3d Cir. 2010).  The filing of a grievance is constitutionally protected conduct.  *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) and *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003)).  Temporal proximity between the exercise of a constitutionally protected right and the adverse action may support an inference of causation.  *Id.* at 334.

Here, Plaintiff alleges several incidents of First Amendment retaliation.  First, he alleges that on August 27, 2015, a Sergeant at NJSP "made [Officer] Morales come be a witness" to the fact that Plaintiff's legal mail had been opened.  According to his Complaint, Officer Morales was "not happy" about being a witness for Plaintiff.  (ECF No. 1, Attachment to Compl. at 8.) Plaintiff later alleges that Officer Morales "in concert with [Officer] Kilpatrick and Sgt. Cecilia planted a wire in [Plaintiff's] cell causing [Plaintiff] to go to detention."  (*Id.*)  Plaintiff states that Officer Morales and Sgt. Cecilia planted the wire "in retaliation for Sgt. Mike making [Officer] Morales a witness to my legal mail being opened on 8-27-15."  Plaintiff further alleges

that these two Defendants planted the wire in retaliation for Plaintiff's filing of an inquiry on September 4, 2015, which stated that Officer Morales was a witness.  (*Id.* at 8-9.)

Even if Plaintiff was engaged in constitutionally protected activity when he sought to enforce his rights with respect to his legal mail and/or filed the inquiry stating that Officer Morales was a witness to the fact that his legal mail had been opened, he has not provided sufficient facts to suggest that the enforcement of his constitutional rights was a substantial motivating factor in Officer Morales and Sgt. Cecilia's alleged decision to "plant a wire" in his cell.  Notably, the inquiry filed by Plaintiff does not appear to be a complaint about Officer Morales, and Plaintiff has not provided facts to suggest a temporal proximity between any constitutionally protected activity and the planting of the wire.

In what appears to be another instance of alleged retaliation, Plaintiff alleges that he "went through severe heat exhaustion" on September 8, 2015, and that Officer Genovesse and Sgt. Cecelia "refused to call a medical code for ten minutes. [Plaintiff] wrote a grievance on Sgt. Ceclia [Officer] Genevesse for their deprivation." [6]   (*Id.*)  Finally, Plaintiff alleges that he "filed a grievance on [Officers] Kilpatrick and Harmon for refusing my legal mail on 4-14-15 and 4-15-15."  Neither of these incidents states a claim for First Amendment retaliation, as Plaintiff has not provided facts showing that he (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights"; and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. *Rauser*, 241

---

[6] In connection with this incident, the Court does <u>not</u> construe Plaintiff to bring a separate claim for denial of adequate medical care under the Eighth Amendment.  That type of claim requires Plaintiff to allege facts showing that prison officials were deliberately indifferent to his serious medical condition.  To the extent Plaintiff seeks to bring such a claim, he may submit an Amended Complaint that provides additional facts to support such a claim.

F.3d at 333.  Instead, Plaintiff merely alleges that he filed grievances against these Defendants <u>after</u> they committed alleged acts of misconduct.

The Court will also dismiss without prejudice the supervisory claims against Defendants Campos, Swift, Robinson, Maine, and Johnson, based on their alleged failure to "curb" the severe harassment and retaliation by staff at NJSP.  (*See* ECF No. 1, Compl. at 4-5, Attachment to Compl. at 2, 7-8.)  Plaintiff has not stated a cognizable claim of First Amendment retaliation, and his allegations regarding the supervisory Defendants are conclusory and do not support a supervisory claim based on knowledge and acquiescence, which requires facts suggesting that each Defendant supervisor "had contemporaneous, personal knowledge of [the alleged violation(s)] and acquiesced in it."  *See Evancho*, 423 F.3d at 353.

For the reasons set forth in this section, the Court will dismiss without prejudice Plaintiff's First Amendment retaliation claims against Defendants Morales, Cecilia, Genevesse, Kilpatrick, and Harmon.  The supervisory claims based on knowledge of and acquiescence in the alleged retaliatory acts are dismissed without prejudice as to Defendants Campos, Swift, Robinson, Maine, and Johnson.

### d. Plaintiff's Additional Filings

The Court next addresses Plaintiff's additional filings.  The Court notes that two letters submitted by Plaintiff in a different civil action were recently re-docketed in the instant matter by Order of the Honorable Kevin McNulty.  (ECF Nos. 7-1-8-1.)  The first letter (ECF No. 7), which is titled "motion to cease and desist", is dated April 29, 2015 and predates the filing of the instant action by more than a year.  The letter alleges a laundry list of misconduct by prison officials and deprivations suffered by Plaintiff:

> Plaintiff has endured massive retaliation, abuse, intimidation,
> discrimination, sexual assault by touching during a search,

> deprivation of heat, deprivation of showers, opening of privilege
> [sic] legal mail out of Plaintiff's presence, being subject to hostile
> environment by staff, failure to treat medically, Retaliation by
> Medical dept, retaliatory cell, and body, searches and etc….

(ECF No. 7, at 1)  The second re-docketed letter, which is dated October 3, 2016, states that

Plaintiff was assaulted by an unidentified officer on August 11, 2016, and alleges other acts of

misconduct by prison officials, including blocking his mail, restricting his calls, and taking

money from his prison account.  (ECF No. 8.)  The letter asks the District Court for an

emergency TRO/injunction, and requests that the letter be forwarded to the undersigned.  (*Id.*)

Finally, on December 1, 2016, Plaintiff filed a document titled "Affidavit of Plaintiff Ivan

McKinney," seeking "emergency injunction" against the New Jersey Department of Corrections

and NJSP.  In this affidavit, Plaintiff provides another laundry list of allegations, which are

conclusory at best and wholly unsupported:

> 2.      I have suffered severe sexual harassment and retaliation at
> New Jersey State Prison such as: sexual assault by officers
> inappropriate touching during searches – excessive force – racial
> discrimination – opening and tampering of legal mail – denial of
> Religious services –threats and insults by officers –denial of proper
> lighting and warmth . . . .
>
> 3.      I have endured severe harassment by N.J.D.O.C. while
> traveling with Central transportation such as: injuries during rough
> riding – denied food – denied access to bathroom inspite [sic] of
> being chronic care patient –denied medical attention after fainting
> on van – purposely driven around for excessive hours for
> retaliation and punishment – constantly called a child rapist –
> forced to endure purposely tightened cuff and shackles –
> constantly denied equal protection of the law.
>
> 4.      Severe harassment by Administration, Medical, custody,
> food service, mailroom, and etc. here at New Jersey State Prison.
>
> 5.      Constant and deliberate retaliation by Central Transport of
> N.J.D.O.C. and N.J.D.O.C. as a whole.

(ECF No. 10, Pl. Affidavit at ¶¶ 2-5.)

Plaintiff may not amend the instant Complaint through letters or his Affidavit.[7]  Although

the Court finds some of Plaintiff's allegations disturbing, they are entirely conclusory and are

wholly lacking in factual support, describing the time, place, and persons involved in the alleged

instances of misconduct.  As such, even if the Court were to treat these allegations as an attempt

to amend the instant Complaint, they would not survive screening under 28 U.S.C. § 1915.

Furthermore, many of the allegations appear to be unrelated to the claims in the instant case.  To

the extent Plaintiff can meet the requirements of Fed. R. Civ. P. 18, which governs joinder of

claims, he may raise additional claims for relief by way of an Amended Complaint in the instant

action within 30 days of the date of the Order accompanying this Opinion.  To the extent joinder

is inappropriate, he may raise those claims in a new action.  In either case, however, he must

provide factual support for any claims he asserts, including the time, place, and persons involved

in the alleged misconduct, and the Court will screen any new claims for dismissal pursuant to 28

U.S.C. 1915(e)(2)(B).

## V.    <u>CONCLUSION</u>

For the reasons explained in this Opinion, the Court will dismiss the official capacity

claims for damages as to all Defendants pursuant to 28 U.S.C. 1915(e)(2)(b).  Plaintiff's First

Amendment claims in connection with the opening of his legal mail outside his presence, as

construed in this Opinion, shall proceed against Defendants Derrick Smith, Antonio Campos,

and Lisa Swift.  The remaining § 1983 claims, as construed in this Opinion, are dismissed

---

[7] To the extent Plaintiff's Affidavit seeks an injunction or restraining order under Fed. R. Civ. P. 65(b) without notice to the adverse party, the Court may grant such a request "only if . . . specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Plaintiff has not provided specific facts and has not made any showing of immediate and irreparable injury.  As such, his request for an injunction or restraining order is denied without prejudice.

without prejudice as to all Defendants pursuant to 28 U.S.C. 1915(e)(2)(b).  Plaintiff may submit

an Amended Complaint with respect to the claims dismissed without prejudice by the Court and,

if appropriate, may also seek to add additional claims raised in his letters to the Court.  The

Amended Complaint shall be submitted within 30 days of his receipt of the Order accompanying

this Opinion.  An appropriate Order follows.


/s/        Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.

Date: December 12, 2016